# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAMANTHA MARIE CARROLL,

      Plaintiff,

    v.                                                      Civ. No. 24-1211 KG/KK

FRANK BISIGNANO, Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

Before the Court is Plaintiff Samantha Marie Carroll's Memorandum of Law in Support of Reversing or Remanding an Administrative Agency Decision (Doc. 15) ("Motion"), filed May 29, 2025. In her Motion, Plaintiff seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") on her Age-18 Disability Redetermination, in which the Commissioner found that she is no longer disabled. (*Id.*) On July 14, 2025, the Commissioner filed a response in opposition to the Motion, and on July 28, 2025, Plaintiff filed a reply in support of it. (Docs. 18, 19.) Having meticulously reviewed the record and the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I propose to find that Plaintiff's Motion is well-taken. I therefore RECOMMEND that the Court GRANT the Motion, REVERSE the Commissioner's decision, and REMAND this matter to the SSA for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a thirty-three-year-old woman who suffers from physical and mental impairments including rheumatoid arthritis ("RA"), degenerative disc disease of the lumbar spine,

---

[1] By an Order of Reference (Doc. 20) entered on January 23, 2026, Chief United States District Judge Kenneth J. Gonzales referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

a herniated intervertebral disc, inflammatory polyarthritis, piriformis syndrome, sicca syndrome with keratoconjunctivitis, nonepileptic seizure disorder, depression, and post-traumatic stress disorder ("PTSD"). (AR 1324.)[2] In July 2009, while still a minor, Plaintiff was awarded Supplemental Security Income ("SSI") due to seizures. (AR 163.)

Plaintiff turned eighteen years old in June 2010. (AR 1324.) She obtained her GED in 2012 and took some community college courses from 2012 to 2013. (AR 458, 1629.) Plaintiff has no significant earnings from employment. (AR 446-47.) She worked briefly as a gas station attendant in 2013 and a hotel housekeeper in 2019. (AR 76-77.) However, she testified that she was fired from the gas station job after she had a seizure at work and that she quit the hotel housekeeping job after she had a seizure at work and also experienced a "severe flare-up" in her hands.[3] (*Id.*)

Beginning in 2016, Plaintiff underwent an Age 18 Disability Redetermination, in which she alleged impairments of RA, low back pain, depression, anxiety, and PTSD.[4] (AR 103, 160-68, 457.) In March 2017, non-examining state agency consultant William Harrison, M.D., analyzed the medical evidence of record and opined that Plaintiff can perform light work, except that she must avoid even moderate exposure to hazards due to her history of seizures.[5] (AR 864–71.) In April 2017, the SSA notified Plaintiff of its determination that she no longer qualified for SSI because she was "no longer disabled" as of that month. (AR 92, 136-37.)

---

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on January 28, 2025. (Doc. 10.)

[3] However, a social worker noted Plaintiff's report that she left her job as a hotel housekeeper after being "impaled by a syringe in one of the rooms." (AR 1039.)

[4] After an individual receiving SSI as a minor turns eighteen, the Commissioner is required to redetermine the individual's eligibility for benefits, "either during the 1-year period beginning on the individual's 18th birthday or, in lieu of a continuing disability review, whenever the Commissioner determines that an individual's case is subject to a redetermination under this clause." 42 U.S.C. § 1382c(a)(3)(H)(iii).

[5] Light work consists of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 416.967(b). Additionally, it involves "a good deal of walking and standing." *Id.*

Plaintiff requested reconsideration of the agency's determination in May 2017, and a hearing officer held a hearing in January 2018. (AR 93, 139, 163.) The hearing officer issued an unfavorable decision in February 2018, and the SSA again notified Plaintiff of its determination that she no longer qualified for SSI. (AR 94, 160-68, 180-81.)

In October 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 186.) ALJ Christopher Juge held a telephonic hearing on July 16, 2020, at which Plaintiff and her counsel appeared. (AR 43–63.) Plaintiff and a Vocational Expert ("VE") testified at the hearing. (*Id.*) On September 4, 2020, ALJ Juge issued a partially favorable decision, finding that Plaintiff's

> disability ended on April 30, 2017, based on [her] age-18 redetermination because she did not satisfy the criteria for disability as an adult. However, beginning December 4, 2019, [she] became disabled again and has continued to be disabled through the date of this decision[.]

(AR 116.)

Plaintiff asked the SSA's Appeals Council to review the ALJ's decision, and on January 15, 2021, the Appeals Council remanded the case to an ALJ for further consideration. (AR 127-29.) Pursuant to this remand, ALJ Lillian Richter held a telephonic hearing on May 11, 2021, at which Plaintiff and her counsel appeared. (AR 64–91.) Plaintiff and a VE testified at the hearing. (AR 65.) On December 21, 2021, ALJ Richter issued an unfavorable decision, finding that Plaintiff's "disability ended on February 28, 2018," and that she has not become disabled again since that date. (AR 28.) On April 18, 2022, the Appeals Council denied Plaintiff's request for review of ALJ Richter's decision. (AR 1.)

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision in this Court on June 20, 2022. (AR 1376–77.) On April 4, 2023, the Court reversed the Commissioner's decision and remanded the case to the agency, concluding that the ALJ had improperly evaluated

the medical opinion evidence. *Carroll v. Kijakazi*, Civ. No. 22-464 JFR, 2023 WL 2770699, at *9–*12 (D.N.M. Apr. 4, 2023). On August 30, 2023, pursuant to the Court's ruling, the Appeals Council vacated the Commissioner's decision and remanded the matter to an ALJ for further proceedings. (AR 1437.)

Following the Appeals Council's August 2023 remand, ALJ Michael Leppala held a hearing on February 14, 2024, at which Plaintiff and her counsel appeared. (AR 1348–75.) Plaintiff and VE Gloria Lasoff testified at the hearing. (*Id.*) On September 27, 2024, ALJ Leppala issued an unfavorable decision, finding that Plaintiff's disability ended on February 28, 2018, and that she has not become disabled again since that date. (AR 1321–34.) Because Plaintiff did not file written exceptions to the decision and the Appeals Council declined to assume jurisdiction on its own, ALJ Leppala's decision is the Commissioner's final decision at issue in this case.[6]

## II. The ALJ's Decision

ALJ Leppala decided Plaintiff's claim pursuant to the Commissioner's five-step sequential evaluation process, except that he bypassed step one because "this step is not used for redetermining disability at age 18."[7] (AR 1322–33 (citing 20 C.F.R. § 416.987(b)).) At step two,

---

[6] "The procedure for appealing an ALJ's decision depends on the posture of the case." *Workman v. Saul*, Civ. No. 19-326, 2020 WL 927689, at *2 (E.D. Okla. Feb. 26, 2020). If a claimant wishes to contest an ALJ's *initial* decision, she must first appeal the decision to the Appeals Council, and if the Appeals Council issues an unfavorable decision, she may then seek judicial review. 20 C.F.R. §§ 416.1467, 416.1481. "But for cases that have been *remanded* by a federal court for further proceedings, there is no requirement that the [claimant] obtain Appeals Council review of the ALJ's new decision prior to seeking judicial review of it." *Workman*, 2020 WL 927689, at *2 (emphasis in original). Rather, the ALJ's decision after remand automatically becomes the Commissioner's final decision unless the Appeals Council assumes jurisdiction *sua sponte* or pursuant to the claimant's written exceptions. 20 C.F.R. § 416.1484.

[7] The Commissioner's five-step sequential evaluation process requires the ALJ to determine whether:

    (1)  the claimant engaged in substantial gainful activity during the alleged period of disability;
    (2)  the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
    (3)  any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
    (4)  the claimant can return to her past relevant work; and, if not,
    (5)  the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience.

the ALJ found that Plaintiff suffers from the severe impairments of RA, degenerative disc disease of the lumbar spine, herniated intervertebral disc, inflammatory polyarthritis, nonepileptic seizure disorder, piriformis syndrome, sicca syndrome with keratoconjunctivitis, depression, and PTSD. (AR 1324.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1324-26.)

At step four,[8] the ALJ concluded that, since February 28, 2018, Plaintiff has had the physical residual functional capacity ("RFC")[9] to

> perform a limited range of light work as defined in 20 CFR 416.967(b). Specifically, the Claimant is limited to occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. The Claimant is further limited to never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling, and frequently reaching. The Claimant is limited to occasional exposure to extreme cold, vibration, unprotected heights, and hazardous machinery, and she must never operate a motor vehicle.[10]

---

20 C.F.R. § 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). The SSA uses this sequential evaluation process in Age 18 Disability Redeterminations, except that it does "not use the rule in § 416.920(b)," which mandates a finding of non-disability if an individual has engaged in substantial gainful activity during the alleged period of disability. *Pena v. Astrue*, Civ. No. 09-1015 CG, 2010 WL 11618899, at *3 (D.N.M. Dec. 20, 2010); 42 U.S.C. § 1382c(a)(3)(H)(iii)(I); 20 C.F.R. §§ 416.920(b), 416.987(b). In other words, in Age 18 Disability Redeterminations, the adjudicator skips the first step of the five-step sequential evaluation process.

[8] Step four of the sequential evaluation process has three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023–26 (10th Cir. 1996). In the first phase, "the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC)." *Id.* at 1023. In the second phase, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Best-Willie v. Colvin*, 514 F. App'x 728, 737 (10th Cir. 2013) (citation omitted). And in the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023.

[9] An individual's RFC is "the most [the individual] can still do" despite the physical and/or mental limitations her impairments cause. 20 C.F.R. § 416.945(a)(1).

[10] The ALJ further found that Plaintiff has the mental RFC to

> understand, carry out, and remember simple and detailed, but not complex, instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work

5

(AR 1326.) Also at step four, the ALJ determined that Plaintiff does not have any past relevant work. (AR 1332.)

At step five, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 1332-33.) In support, the ALJ relied on VE Lasoff's testimony that a person with Plaintiff's age, education, work experience, and assigned RFC could perform the representative occupations of cleaner, assembler, and material distributor. (AR 1333.) The ALJ therefore concluded that Plaintiff's disability ended on February 28, 2018, and that she has not become disabled again since that date. (AR 1333-34.)

### III. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

---

situations, deal with occasional changes in [the] work setting, [and] maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. The Claimant is limited to occasional interaction with coworkers, supervisors, and the general public.

(AR 1326.) In her Motion, Plaintiff does not challenge the ALJ's assessment of her mental RFC. (*See generally* Doc. 15.)

The Court will not disturb the Commissioner's decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citation omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (citation omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## IV. DISCUSSION

In her Motion, Plaintiff argues that the ALJ erred in evaluating the medical opinion of consultative examiner Kathy Clarke, M.D., in assessing Plaintiff's RFC at step four of the sequential evaluation process. (Doc. 15 at 7–11; *see* AR 1308.) More particularly, Plaintiff asserts

that the ALJ improperly analyzed the supportability and consistency of Dr. Clarke's opinion and therefore erred in rejecting it as "too restrictive." (Doc. 15 at 8-11 (citing AR 1331).) Plaintiff further contends that the ALJ's errors in evaluating Dr. Clarke's opinion are not harmless. (*Id*. at 10-11.) As explained below, I agree.

**A. Legal Standards Governing an ALJ's RFC Assessment and Evaluation of Medical Opinion Evidence**

An ALJ's assessment of a claimant's RFC must be "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009); *see also* 20 C.F.R. § 416.945(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence."). The ALJ must consider "the combined effect of all of the claimant's medically determinable impairments," *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), and the claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at *7 (Jul. 2, 1996).

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts… and nonmedical evidence." *Wells*, 727 F.3d at 1069 (emphasis omitted). Among other things, the ALJ's narrative must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7. "[I]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (brackets omitted); *Panas on behalf of M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 436–37 (10th Cir. 2019). The ALJ "must

8

make sufficiently specific findings in each of his relevant determinations so that his decision is capable of meaningful review." *Spicer v. Barnhart*, 64 F. App'x 173, 178 (10th Cir. 2003). When an ALJ "fail[s] to make all the detailed findings required by the regulations and rulings at step four, his RFC conclusions are not supported by substantial evidence." *Southard v. Barnhart*, 72 F. App'x 781, 785 (10th Cir. 2003).

In 2017, the SSA issued new regulations regarding the evaluation of medical opinions for claims filed on or after March 27, 2017. 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 416.920c. However, the agency considers "an age 18 redetermination to be a new claim … filed on the day a person attains age 18." Program Operation Manuel System ("POMS") DI § 24503.050(D)(8).[11] Thus, and because Plaintiff turned eighteen in June 2010, the previous regulations regarding the evaluation of medical opinions apply here. 20 C.F.R. § 416.927.

Under the applicable regulations, an ALJ must consider all medical opinions in the record and discuss the weight he gives to each opinion. *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014); 20 C.F.R. § 416.927(c). Factors the ALJ must consider include the source's examining relationship with the claimant, the source's treatment relationship, if any, with the claimant, how well the source supports her opinion, the consistency of the opinion with the record as a whole, whether the source is a specialist, the source's "understanding of [the SSA's] disability programs and their evidentiary requirements," and the source's familiarity "with the other information in [the claimant's] case record." 20 C.F.R. § 416.927(c)(1)-(6). An ALJ must "provide specific, legitimate reasons if he decide[s] to discount or dismiss an opinion from an acceptable medical

---

[11] The POMS is "a set of policies issued by the [SSA] to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). Courts in the Tenth Circuit "defer to the agency interpretations stated in the POMS unless they are 'arbitrary, capricious, or contrary to law.'" *Lee v. Colvin*, 631 F. App'x 538, 541 n.1 (10th Cir. 2015) (citation omitted).

source." *Harrold v. Berryhill*, 714 F. App'x 861, 865 (10th Cir. 2017) (quotation marks and citation omitted); *see also* SSR 96-8P, 1996 WL 374184, at *7 (if ALJ's RFC assessment conflicts with medical opinion, ALJ must explain why he did not adopt it).

## B. The ALJ Erred in Evaluating Dr. Clarke's Opinion

### 1. Dr. Clarke's Opinion

Dr. Clarke examined Plaintiff on September 14, 2021, "for the purpose of providing information to the state disability office for their use in making a determination of disability[.]" (AR 1308.) Before the examination, Dr. Clarke received and reviewed Plaintiff's "past medical history" from the state disability office. (*Id.*)

At the examination, Dr. Clarke took Plaintiff's social, medical, and functional history and listed her current medications. (AR 1308–10.) Among other things, Dr. Clarke noted Plaintiff's report that she suffers from RA, chronic low back pain, depression, anxiety, and PTSD complicated by psychogenic nonepileptic pseudo-seizures. (AR 1308.) Dr. Clarke further noted Plaintiff's report that she does not use an assistive device to get around, is able to walk one block on level ground, has difficulty standing for five to fifteen minutes or lifting more than five pounds, can turn a doorknob, and is able to drive a car, cook, and shop for groceries for no more than fifteen minutes at a time. (AR 1309.)

Dr. Clarke also performed a physical examination, noting that Plaintiff "cooperated well with the examiner and gave [her] best effort." (AR 1314.) During the examination, Dr. Clarke observed that Plaintiff: (1) was unable to walk on her toes due to joint pain and weakness; (2) was unable to squat due to joint pain and weakness; (3) was unable to bend over and touch her toes due to pain and stiffness in her hips and back; (4) had mild difficulty getting up and out of a chair; (5) had mild difficulty getting on and off the exam table; and, (6) had mild difficulty with tandem heel

walking. (AR 1310.) Dr. Clarke further observed that Plaintiff had "spasm of the paraspinous muscles" and straight-leg-raising tests that were "negative" but "with pain."[12] (AR 1311.) However, Dr. Clarke also noted that Plaintiff ambulated without difficulty, did not use an assistive device, and had a normal gait. (AR 1310.) Additionally, Dr. Clarke observed that Plaintiff had "normal motor strength" in both arms, mild weakness in both legs, "normal grip strength" and "normal fine and gross manipulative skills" in both hands, intact sensation, and normal reflexes. (AR 1312.)

During her physical examination of Plaintiff, Dr. Clarke made detailed findings regarding the range of motion of Plaintiff's joints. With respect to Plaintiff's lumbar spine, Dr. Clarke found that Plaintiff had limited forward flexion, extension, lateral flexion, and rotation. (AR 1313, 1316.) With respect to both of Plaintiff's shoulders, Dr. Clarke observed that Plaintiff had limited abduction, forward elevation, and internal and external rotation. (*Id*.) Dr. Clarke further noted "marked bilateral … crepitus" in both shoulders.[13] (*Id*.)

Dr. Clarke's examination of the joints in Plaintiff's hands also revealed extensive abnormalities. (AR 1313–14, 1316.) Specifically, Dr. Clarke observed: (1) limited flexion in the metacarpophalangeal ("MCP") joints of the second through fifth fingers of both hands[14]; (2) effusion and tenderness in the MCP joints of the second through fifth fingers of both hands; (3)

---

[12] A straight-leg-raising test is positive for disk compression of a spinal nerve root if it reproduces or worsens "pain that radiates from the buttock downward along the course of the sciatic nerve" and "firm resistance to further elevation of the leg." Allan H. Ropper & Ross D. Zafonte, *Sciatica*, THE NEW ENGLAND JOURNAL OF MEDICINE Vol. 372 No. 13 (Mar. 26, 2015), https://www.nejm.org/doi/full/10.1056/NEJMra1410151 (last accessed Jan. 22, 2026). However, people may experience pain during the test in the absence of this positive finding due to other conditions. *Id.*

[13] "Crepitus" refers to "[t]he crackling, crunching, grinding or grating noise that accompanies flexing a joint." Cedars Sinai, *Crepitus*, https://www.cedars-sinai.org/stories-and-insights/innovation-and-research/crepitus (last accessed Jan. 22, 2026).

[14] The MCP joints of the hand are the knuckles. Cleveland Clinic, *Arthritis of the Hand*, https://my.clevelandclinic.org/health/diseases/7082-arthritis-of-the-wrist-and-hand (last accessed Jan. 22, 2026).

limited flexion in the proximal interphalangeal ("PIP") joints of the second through fifth fingers of both hands[15]; (4) effusion and tenderness in the PIP joints of the second through fifth fingers of both hands; (5) limited flexion in the distal interphalangeal ("DIP") joints of all five digits of both hands[16]; and, (6) hyperflexion deformities in the DIP joints of the second through fifth fingers of both hands. (*Id.*)

Based on her examination, Dr. Clarke opined that Plaintiff has functional physical limitations. (AR 1315.) Specifically, Dr. Clarke opined that Plaintiff: (1) can stand "occasionally," *i.e.*, for up to one-third of an eight-hour workday; (2) can sit "frequently," *i.e.*, for up to two-thirds of an eight-hour workday; (3) can walk "frequently"; (4) is "moderate[ly]" limited in her ability to bend or stoop "due to [RA] affecting [her] back"; (5) is "significant[ly]" limited in her ability to reach, handle, and grasp "due to RA affecting [her] hands"; and, (6) can lift and carry less than five pounds "occasional[ly]."[17] (AR 1315.)

### 2. The ALJ's Evaluation of Dr. Clarke's Opinion

The ALJ assigned "some weight" to Dr. Clarke's opinion but did not "completely accept[]" it because he found it to be "too restrictive based on the examination results." (AR 1331.) In support of this conclusion, the ALJ stated:

> Claimant demonstrated she could walk unassisted with a normal gait and perform fine/gross manipulative skills. Additionally, she had normal grip strength (5/5) in both hands and strength was only slightly decreased (4/5) in her lower extremities (Exhibit 32F). Furthermore, Dr. Kathy Clark[e]'s examination results did not appear consistent with the record as a whole because other exams did not document

---

[15] The PIP joints of the hand are the second or middle joints of the fingers. Cleveland Clinic, *Arthritis of the Hand*, https://my.clevelandclinic.org/health/diseases/7082-arthritis-of-the-wrist-and-hand (last accessed Jan. 22, 2026).

[16] The DIP joints of the hand are the top joints of the fingers. Cleveland Clinic, *Arthritis of the Hand*, https://my.clevelandclinic.org/health/diseases/7082-arthritis-of-the-wrist-and-hand (last accessed Jan. 22, 2026).

[17] Dr. Clarke also opined that Plaintiff has significant mental limitations due to her psychiatric impairments. (AR 1315.) However, the ALJ disregarded the "mental impairment related diagnoses and limitations" in Dr. Clarke's report "because this [area was] outside of her expertise." (AR 1331-32.) Plaintiff does not challenge this aspect of the ALJ's decision. (*See generally* Docs. 15, 19.)

limited range of motion in extremities or decreased strength (Exhibits 26F, pages 38 and 73; 27F, page 3; 30F, page 5; 31F, page 27; 36F, page 3; and 48F, pages 8, 12, 16, and 25–26).[18]

(AR 1331-32 (footnote added).)

### 3. Analysis

As noted above, Plaintiff argues that the ALJ improperly evaluated Dr. Clarke's opinion in assessing her RFC at step four. (Doc. 15 at 7-11.) Specifically, according to Plaintiff, the ALJ erred in concluding that Dr. Clarke's examination findings do not support all of the limitations she assessed and that her examination results are inconsistent with other medical evidence of record. (*Id.*) Plaintiff claims that in reaching these conclusions, the ALJ improperly disregarded Dr. Clarke's examination findings that support her opinion as well as other medical evidence consistent with it, picking and choosing among the medical reports and using portions favorable to his position while ignoring other significantly probative evidence. (*Id.*)

In his response, the Commissioner counters that substantial evidence "supports the ALJ's conclusion that consultative examiner Dr. Clark[e]'s opinion was entitled to only some weight." (Doc. 18 at 6.) The Commissioner maintains the ALJ was correct when he concluded that Dr. Clarke's examination findings do not fully support her opinion and that the opinion is inconsistent with other record evidence, and these were "good reasons" for his treatment of the opinion. (*Id.* at 6-7.) In the Commissioner's view, Plaintiff asks the Court to reweigh Dr. Clarke's opinion, "which is not permissible on the deferential substantial evidence standard of review applicable here." (*Id.* at 7.)

As noted in Section IV.B.2., *supra*, the ALJ gave two reasons for his partial rejection of Dr. Clarke's opinion. First, the ALJ wrote that Dr. Clarke's opinion "was too restrictive based on the

---

[18] (*See* AR 1092, 1127, 1135, 1259, 1290, 1714, 2847, 2851, 2855, 2864–65.)

examination results." (AR 1331.) In other words, the ALJ concluded that Dr. Clarke's examination findings do not support all of the limitations she assessed. (AR 1331-32.) Second, the ALJ stated that Dr. Clarke's examination results appear to be inconsistent with the other medical evidence of record. (AR 1332.) However, as explained below, the ALJ failed to demonstrate that substantial evidence supports either of these conclusions and that he applied correct legal standards in reaching them.

Turning first to the ALJ's supportability analysis, 20 C.F.R. § 416.927 provides that the "more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the SSA] will give that medical opinion." 20 C.F.R. § 416.927(c)(3). The regulation further states that the "better an explanation a source provides for a medical opinion, the more weight [the SSA] will give that medical opinion." *Id*. Internal inconsistencies in a medical opinion go to the opinion's supportability, *Soderberg v. Kijakazi*, Civ. No. 20-1256 GBW, 2022 WL 884305, at *6 (D.N.M. Mar. 25, 2022), and are a legitimate reason to accord the opinion less weight. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (holding that ALJ "permissibly assigned low weight" to "unsupported and seemingly inconsistent opinions" in source's letter).

To support his conclusion that the limitations Dr. Clarke assessed are "too restrictive based on the examination results," the ALJ cited Dr. Clarke's findings that Plaintiff "could walk unassisted with a normal gait," had "only slightly" decreased leg strength, could "perform normal fine/gross manipulative skills," and had normal grip strength. (AR 1331–32.) However, as an initial matter, the ALJ's bare recitation of these findings is flawed on its face because the ALJ failed to indicate which assessed limitations the findings purportedly undermine. Of course, one could speculate on this point by trying to connect the findings the ALJ cited to the assessed

limitations that he excluded from Plaintiff's RFC. But as explained below, doing so turns out to be less illuminating than one would expect.

Comparing the limitations Dr. Clarke assessed with the RFC the ALJ assigned, the ALJ appears to have excluded from the RFC Dr. Clarke's assessments that Plaintiff: (1) can stand only occasionally; (2) is significantly limited in her ability to reach, handle, and grasp; and, (3) can only occasionally lift and carry less than five pounds. (*Compare* AR 1315 *with* AR 1326.) But trying to connect these limitations to the findings the ALJ cited yields at least two potentially anomalous results. First, in concluding that Dr. Clarke's findings do not fully support her opinion, the ALJ relied on her finding that Plaintiff can walk unassisted with a normal gait, a finding that would most logically detract from Dr. Clarke's assessment that Plaintiff is limited to frequent walking. (AR 1310, 1315, 1331-32.) Yet the ALJ did not exclude Dr. Clarke's frequent-walking limitation from the RFC he assigned. (AR 1326.) And second, though the ALJ seems to have excluded Dr. Clarke's reaching, lifting, and carrying limitations from the assigned RFC, these activities appear to involve many abilities other than or in addition to normal grip strength and manipulative skills in the hands, the only findings the ALJ cited that could possibly apply. (AR 1326, 1331-32, 1313-15.) Thus, the ALJ's failure to connect the findings he cited to the assessed limitations he believed them to undermine hinders meaningful review of his evaluation of Dr. Clarke's opinion. *Spicer*, 64 F. App'x at 178.

Further, even assuming one could confidently and accurately link each cited examination finding to the part of Dr. Clarke's opinion the ALJ believed it to undermine, the ALJ's explanation for his treatment of the opinion would still be inadequate. With respect to the standing limitation the ALJ rejected, Dr. Clarke did, as the ALJ observed, find that Plaintiff could walk unassisted with a normal gait and had only mildly decreased leg strength. (AR 1310, 1312, 1331-32.) But the

ALJ failed to explain why these findings undermine Dr. Clarke's assessment that Plaintiff can stand only occasionally. (AR 1331-32.) Moreover, such a connection is not obvious in light of Dr. Clarke's other findings, which appear to support her assessment that Plaintiff's lower body joint pain and stiffness preclude standing for more than two to three hours per day "on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *7. These findings include that Plaintiff could not walk on her toes, squat, or bend over and touch her toes, had difficulty with tandem heel walking, getting up from a chair, and getting on and off an exam table, and had spasm of the paraspinous muscles, pain with straight-leg-raising, and limited range of motion in the lumbar spine. (AR 1310-14.) Yet the ALJ "fail[ed] to discuss … and resolve whether these findings could account for the [standing limitation Dr. Clarke] assessed, or why not." *Carroll*, 2023 WL 2770699, at *10.

Likewise, with respect to the reaching, handling, grasping, lifting, and carrying limitations the ALJ excluded, Dr. Clarke did, as the ALJ observed, find that Plaintiff demonstrated normal grip strength and gross and fine motor manipulative skills in the hands. (AR 1312, 1331-32.) But again, the ALJ failed to explain why these findings undermine the reaching, handling, grasping, lifting, and carrying limitations Dr. Clarke assessed. (AR 1331-32.) And again, such a connection is not obvious in light of Dr. Clarke's other examination findings, which appear to support her assessment that multiple shoulder and hand abnormalities significantly limit Plaintiff's ability to reach, handle, grasp, lift, and carry "on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *7. Most notably, these findings include that Plaintiff had limited range of motion and "marked … crepitus" in both shoulders and effusion, tenderness, hyperflexion deformity, and pervasively limited range of motion in both hands.[19] (AR 1313-14, 1316.) Again, however, the

---

[19] Elsewhere in his decision, the ALJ stated that physical limitations greater than those in the assessed RFC were unwarranted because Plaintiff exhibited not only normal gait, grip strength, and manipulative skills, but also "intact

16

ALJ failed to address these findings "and resolve whether they could account for the functional limitations assessed, or in the alternative explain why not." *Carroll*, 2023 WL 2770699, at *10. In all of the above respects, the ALJ's evaluation of Dr. Clarke's opinion is inadequate to permit meaningful review of his reasons for the weight he gave it. *Spicer*, 64 F. App'x at 178.

Additionally, in failing to address the abnormal examination findings supportive of Dr. Clarke's opinion in his explanation for partially rejecting that opinion, it appears that the ALJ improperly picked and chose among the findings, using portions favorable to his position while ignoring other portions. *Panas*, 775 F. App'x at 436–37. It is true, of course, that elsewhere in his decision, the ALJ briefly acknowledged many of Dr. Clarke's abnormal findings. Thus, in his initial description of her consultative examination of Plaintiff, the ALJ mentioned that Plaintiff exhibited paraspinous muscle spasm and limited range of motion in her shoulders, hands, and lumbar spine, and was unable to walk on her toes, squat, tandem walk, or bend over to touch her toes. (AR 1329.) And in support of the RFC he assigned, he again pointed to Dr. Clarke's findings of muscle spasm, mildly reduced leg strength, and "limited range of motion in the spine and various joints." (AR 1331.)

However, these brief mentions do not redeem the errors in the ALJ's supportability analysis of Dr. Clarke's opinion for two reasons. First, as already discussed, the ALJ never explained why he deemed the abnormal findings he mentioned elsewhere in his decision inadequate to support the limitations Dr. Clarke assessed, nor are his reasons obvious. (*See* AR 1331-32.) And second, he wholly ignored several other abnormal findings supportive of Dr. Clarke's opinion, including Plaintiff's: (1) stiffness in her back and hips; (2) difficulty getting up out of a chair; (3) difficulty

---

sensation," at Dr. Clarke's examination. (AR 1331.) However, the ALJ never stated that the finding of intact sensation undermined Dr. Clarke's opinion, much less explained why it might do so. (*See generally* AR 1321-34.)

getting on and off of an exam table; (4) pain with straight-leg-raising; (5) marked bilateral shoulder crepitus; (6) effusion and tenderness in the MCP and PIP joints of the second through fifth fingers bilaterally; and, (7) hyperflexion deformity in the DIP joints of the second through fifth fingers bilaterally. (*Compare* AR 1310-11, 1313-14 *with* AR 1321-34.) It is unclear whether the ALJ considered these findings at all, much less factored them into his analysis of the supportability of Dr. Clarke's opinion. For all of the above reasons, the ALJ's supportability analysis fails to adequately describe specific, legitimate reasons for the weight he gave Dr. Clarke's opinion.

Moving on to the ALJ's analysis of the consistency of Dr. Clarke's opinion with the other medical evidence of record, 20 C.F.R. § 416.927 provides that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 416.927(c)(4). A medical opinion's inconsistency with other medical evidence is a valid reason for an ALJ to accord a medical opinion less weight. *See Pisciotta*, 500 F.3d at 1078. However, as explained below, here the ALJ's consistency analysis of Dr. Clarke's opinion fails to demonstrate that the ALJ applied correct legal principles and that substantial evidence supports the analysis.

In explaining his evaluation of her opinion, the ALJ stated that Dr. Clarke's "examination results did not appear consistent with the record as a whole because other exam results did not document limited range of motion in extremities or decreased strength." (AR 1332.) In support, the ALJ cited to nine medical reports in the record. (*Id.* (citing AR 1092, 1127, 1135, 1259, 1290, 1714, 2847, 2851, 2855, 2864–65).)[20] But the ALJ's reliance on the cited reports is inadequate for three reasons.

---

[20] The ALJ listed ten record citations to support his consistency analysis of Dr. Clarke's opinion; however, AR 1259 and AR 1714 are duplicate reports regarding Plaintiff's June 30, 2020, visit with Julie Fitzgerald, P.A. (AR 1332; *see* AR 1259, 1714.)

First, the cited reports from October 14, 2022 (AR 2864-65), December 1, 2022 (AR 2855), December 15, 2022 (AR 2851), and May 25, 2023 (AR 2847) make no mention of Plaintiff's range of motion or strength. In other words, they simply do not address whether Plaintiff's strength and range of motion were normal on those dates. Thus, four of the nine reports on which the ALJ relied fail to contradict Dr. Clarke's examination findings of mild weakness in Plaintiff's legs and limited range of motion in her lumbar spine, shoulders, and hands.

Second, the ALJ failed to acknowledge or discuss that symptoms of RA, the diagnosis to which Dr. Clarke attributed the abnormal physical findings she made, often come and go. *See, e.g.*, Cleveland Clinic, *Rheumatoid Arthritis*, https://my.clevelandclinic.org/health/diseases/4924-rheumatoid-arthritis (last accessed Jan. 22, 2026); Mayo Clinic, *Rheumatoid Arthritis*, https://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/symptoms-causes/syc-20353648 (last accessed Jan. 22, 2026). Thus, that Plaintiff was experiencing normal strength and/or range of motion on December 3, 2019 (AR 1092), March 5, 2020 (AR 1127), June 4, 2020 (AR 1135), June 30, 2020 (AR 1259, 1714), and April 29, 2021 (AR 1290), does not, absent further explanation, undercut Dr. Clarke's detailed findings of weakness and pervasively limited range of motion on September 14, 2021. (AR 1312-16.) Indeed, Plaintiff's providers' assessments of ongoing RA on December 3, 2019 (AR 1093), March 5, 2020 (AR 1129), June 30, 2020 (AR 1259-60), and April 29, 2021 (AR 1290), show that these providers continued to accept the diagnosis even though Plaintiff did not present with weakness and/or limited range of motion on those dates.[21]

---

[21] The ALJ did not reject Dr. Clarke's assessment that Plaintiff suffers from RA, (AR 1314), nor would substantial evidence support such a rejection. There is currently no cure for RA, *see* Cleveland Clinic, *Rheumatoid Arthritis*, https://my.clevelandclinic.org/health/diseases/4924-rheumatoid-arthritis (last accessed Jan. 22, 2026); and, Plaintiff received a "confirmed" diagnosis of the disease as early as November 2016, based on her symptoms and laboratory test results. (AR 780-82.)

And finally, eight of the nine reports the ALJ cited include notations of other symptoms consistent with ongoing inflammatory joint disease and thus with the results of Dr. Clarke's examination. On December 3, 2019, Plaintiff reported "ongoing chronic bilateral hip pain." (AR 1091.) On June 4, 2020, Plaintiff reported bilateral wrist pain with swelling and problems writing. (AR 1134.) On June 30, 2020, Plaintiff reported problems with her shoulders, hips, morning stiffness, joint pain, and swelling in the extremities. (AR 1258-59.) On April 29, 2021, Plaintiff reported pain in her shoulders, elbows, hands, and feet, morning stiffness, and swelling in her fingers, and her provider observed that she had active synovitis in her second and third PIP joints bilaterally on examination.[22] (AR 1290.) On October 14, 2022, Plaintiff reported morning stiffness and severe body pain. (AR 2862, 2864.) On December 1, 2022, Plaintiff reported low back spasm and pain, and on examination her provider noted that she was "tender all over [her] low back." (AR 2853, 2855.) And on December 15, 2022, and May 25, 2023, Plaintiff again reported significant low back pain. (AR 2847, 2851.) Yet the ALJ did not discuss these notations in his consistency analysis of Dr. Clarke's opinion. (AR 1331-32.)

Additionally, Plaintiff's provider made findings consistent with Dr. Clarke's opinion in at least one report the ALJ did *not* cite in evaluating the opinion. (AR 1264-65, 1332.) Specifically, in July 2019, Plaintiff's provider found that (1) although Plaintiff had normal motor strength in her extremities, "[s]trength maneuvers provoked diffuse pain in all her joints," and (2) Plaintiff had "pain on palpation of her back and neck and shoulders." (AR 1264-65.) In sum, because the ALJ failed to discuss whether he discounted the above significantly probative notations and records

---

[22] "Synovitis is swelling in the synovial membrane that lines some of your joints. It's very common in people who have arthritis." Cleveland Clinic, *Synovitis*, https://my.clevelandclinic.org/health/diseases/synovitis (last accessed Jan. 22, 2026).

consistent with Dr. Clarke's opinion, and if so why, his consistency analysis fails to adequately describe specific, legitimate reasons for the weight he gave the opinion.

### C. The ALJ's Errors Were Not Harmless

In addition to asserting that the ALJ did not err in evaluating Dr. Clarke's opinion, the Commissioner argues that any errors in the ALJ's evaluation were harmless. (Doc. 18 at 10.) An error is harmless when the Court can confidently say "that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In other words, errors that are "minor enough not to undermine confidence in the determination of [a] case" will be considered harmless. *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993). As explained below, however, the ALJ's errors here do undermine confidence in his determination of the case.

As the discussion in Section IV.B., *supra*, makes plain, if the ALJ had properly evaluated Dr. Clarke's opinion, he may have accorded it greater weight. This, in turn, may have led him to assign Plaintiff a more restrictive RFC that incorporated more of the functional limitations Dr. Clarke assessed.

Then, a more restrictive RFC more fully aligned with Dr. Clarke's opinion could have resulted in a finding of disability. In concluding that Plaintiff can perform work that exists in significant numbers in the national economy, the ALJ relied on the testimony of VE Lasoff. (AR 1333.) VE Lasoff identified representative occupations a person with Plaintiff's characteristics could perform based on a hypothetical the ALJ posed, which, like the RFC he assigned, excluded some of the limitations Dr. Clarke assessed. (*Compare* AR 1315 *with* AR 1370-71.) Among other things, this hypothetical excluded the assessed limitations that Plaintiff can only occasionally stand, is significantly limited in her ability to reach, handle, and grasp, and can only occasionally

lift and carry less than five pounds. (*Id.*) By itself, the VE's reliance on this hypothetical suggests that the jobs she identified may be unavailable to someone with the limitations the ALJ excluded from it.

Moreover, on cross-examination, the VE affirmatively testified that none of the jobs she identified in response to the ALJ's hypothetical would be available if the hypothetical had included the limitation of occasionally lifting and carrying no more than five pounds or the limitation of occasionally reaching and handling. (AR 1373.) This testimony confirms that if the ALJ had accorded Dr. Clarke's opinion more weight and thus included one or both of these limitations in Plaintiff's RFC, he may have found that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform, and thus that Plaintiff is disabled.[23]

Finally, in his response to Plaintiff's Motion, the Commissioner contends that any errors in the ALJ's evaluation of Dr. Clarke's opinion were harmless because "Plaintiff admitted that she worked as a [hotel] housekeeper … during the adjudicated period, one of the exact occupations the ALJ found she was capable of performing with the assessed workplace limitations she now challenges." (Doc. 18 at 10.) "The record, however, reveals that [Plaintiff] worked [as a hotel housekeeper] for less than one month," *Carroll*, 2023 WL 2770699, at *12, and earned *de minimis* income at this job. (AR 446-47.) Such "[s]hort-term, intermittent work projects are not equivalent to gainful activity." *Carroll*, 2023 WL 2770699, at *12. Indeed, if anything, Plaintiff's unsuccessful attempt to perform this job reinforces the VE's testimony that a person with the reaching, handling, lifting, and carrying limitations Dr. Clarke assessed could not successfully

---

[23] This remains true even though, as the Commissioner points out, Dr. Clarke opined that Plaintiff is "significant[ly]" limited in her ability to reach and handle, not that Plaintiff is limited to "occasionally" reaching and handling. (Doc. 18 at 10; *see* AR 1315.) First, it appears reasonable to equate a significant functional limitation with the ability to perform the function at issue only occasionally, as Plaintiff's counsel did in his cross-examination of VE Lasoff. (AR 1373.) Second, VE Lasoff testified that not only the occasional-reaching-and-handling limitation, but also the specific lifting-and-carrying limitation Dr. Clarke assessed, would eliminate the available jobs she identified. (AR 1373.)

perform it. For these reasons, I cannot say that the ALJ's errors in evaluating Dr. Clarke's opinion were harmless. *See Harrold v. Berryhill*, 714 F. App'x 861, 870 (10th Cir. 2017) (holding that ALJ's error was not harmless where, "if credited by the ALJ on remand, [the medical opinion] could alter the ALJ's RFC determination and potentially change the outcome").

## V. CONCLUSION

For the reasons explained above, I recommend that Plaintiff's Motion (Doc. 15) be GRANTED, and that the Commissioner's decision finding that Plaintiff has not been disabled since February 28, 2018, be REVERSED and this matter REMANDED to the SSA for further proceedings in accordance with these proposed findings and recommended disposition.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE